UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| FRANCISCO RODRIGUEZ, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | 2:22CV198-PPS/JEM |
| THE MAJESTIC STAR CASINO, LLC, d/b/a Hard Rock Casino Northern Indiana, HRNI HOLDINGS, LLC, d/b/a Hard Rock Casino Northern Indiana, HARD ROCK NORTHERN INDIANA, LLC, HARD ROCK GARY MANAGER, LLC and HARD ROCK GARY, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

For himself and putatively on behalf of other dealers of table games at the Hard Rock Casino in Gary, Indiana, plaintiff Francisco Rodriguez brings claims that the operators of the casino have violated federal and state laws governing minimum wage, overtime, and the handling of tip income. [DE 20.] The casino operators (I'll refer to them collectively as "the Casino") now seek dismissal of certain claims within Rodriguez's First Amended Complaint. [DE 22.] The court has not been asked to certify a class under Rule 23 of the Federal Rules of Civil Procedure or to approve a collective action under the Fair Labor Standards Act, 29 U.S.C. §216(b), so the motion to dismiss is limited to the viability of claims as pled by the individual named plaintiff.

**Introduction**

At all relevant times, the applicable federal minimum wage was $7.25 per hour. *See* https://www.dol.gov/general/topic/wages/minimumwage.  As Rodriguez acknowledges, the Fair Labor Standards Act permits an employer to take a "tip credit" towards its minimum wage obligations for employees who regularly receive tips in the course of their employment.  [First Amended Complaint, DE 30 at ¶52.]  The Casino's first argument is that the First Amended Complaint does not sufficiently plead a violation of this provision.  The relevant federal statute is 29 U.S.C. §203(m):

> (2)(A) In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
> (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee **unless such employee has been informed by the employer of the provisions of this subsection**, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.
>
> (B) An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

[Emphasis added.] Section 203(t) defines "tipped employee" as one "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." Indiana law governing minimum wage also contains a provision permitting a tip credit. Ind. Code §22-2-2-4(d).

The First Amended Complaint alleges that Rodriguez was not paid the mandated federal minimum wage, and that he was not paid an overtime premium for all hours over 40 worked in a single workweek. [DE 20 at ¶3.] Rodriguez claims that the Casino has violated the FLSA's tip credit provision (Count II), Indiana's tip credit provision (Count V), Indiana's overtime law (Count VII), and the FLSA's overtime requirements (Count VIII). Rodriguez alleges that the Casino "fail[ed] to inform tipped employees of the provisions of the tip-credit subsection of the FLSA and requir[ed] tipped Table Games Dealers to participate in unlawful tip pooling whereby tipped employees are required to share their tips with management and supervisors." [DE 20 at ¶54.]

The Casino contends that the "tip credit notice" claims should be dismissed because "the FAC fails to specifically articulate the rate of pay that Plaintiff received, the amount of the tip credit [the Casino] allegedly used for Plaintiff, or any information about when or how [the Casino] purportedly failed to provide notice to its employees of changes to the amounts of the tip credits." [DE 22 at 15.] The Casino also alleges that the overtime violation claims are subject to dismissal because they are supported only by "conclusory allegations" and the First Amended Complaint "fails to provide any

3

factual support that table games dealers were not paid overtime for hours worked in excess of 40 hours in any workweek such as how many hours were worked, or what, if anything, table games dealers were paid." [DE 22 at 12.]

## Standards Governing a Motion to Dismiss Under Rule 12(b)(6)

A motion under Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of the complaint "to state a claim upon which relief can be granted." The Supreme Court interpreted the Rule 12(b)(6) pleading standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Ruling on a motion under Rule 12(b)(6), I must accept the truth of the pleading's well-pleaded allegations, and draw all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 5507 F.3d 614, 618 (7th Cir. 2007). The Rule 12(b)(6) standard requires "a claim to relief that is plausible on its face," which in turn requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556.

The Seventh Circuit has described *Twombly* as establishing "two easy-to-clear hurdles," namely that (1) the complaint describe the claim in sufficient detail to give the defendant fair notice of the claim and the basis for it, and (2) the allegations plausibly suggest that the plaintiff has a right to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008), quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "Plausibility" in this context does not empower the court to consider which party's story should be believed, but only that

4

"the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

The Casino cites the Seventh Circuit's application of these Rule 12(b)(6) standards in the context of a minimum wage claim under the FLSA. In *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018), the Seventh Circuit held that "[i]n order to comply with the requirements of *Twombly, Iqbal*, and Fed.R.Civ.P. 8(a)(2), a plaintiff alleging a federal minimum wage violation must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid." [DE 22 at 14.] *See also Brant v. Schneider National, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022). Rodriguez agrees that this is the applicable standard, but contends that the First Amended Complaint readily meets it. [DE 28 at 5.]

## Discussion

The Casino argues that the First Amended Complaint inadequately pleads the tip credit claims:

> Plaintiff simply asserts [the Casino] failed to provide notice relating to taking a tip credit, yet the FAC fails to specifically articulate the rate of pay that Plaintiff received, the amount of the tip credit [the Casino] allegedly used for Plaintiff, or any information about when or how [the Casino] purportedly failed to provide notice to its employees of changes to the amounts of the tip credits.

[DE 22 at 15.] The Casino argues that these deficiencies warrant dismissal of the tip credit notice claims in Counts II (federal Fair Labor Standards Act) and V (Indiana

5

Wage Payment Act). Rodriguez responds by pointing me to paragraphs 11 and 12 of the First Amended Complaint.

Paragraph 11 addresses the period of August 16 to 22, 2021, alleging that Rodriguez was paid direct cash wages of $168, calculated as $7.00 per hour for 24 hours. [DE 20 ¶11 at 4.] The same paragraph alleges that the Casino paid this below-minimum wage by taking a tip credit of 25¢ per hour to which the Casino was not entitled because it "never informed Rodriguez of other Table Games Dealers of the required tip credit provisions and required Rodriguez to participate in a tip pool with management and supervisors and used his tips to pay Defendants' business expenses[.]" [*Id*.]

Rodriguez also cites the particular allegations of paragraph 12 of the First Amended Complaint concerning the week of May 17 through 23, 2021. Paragraph 12 asserts that for that week he worked 40 regular hours for which he was paid a wage rate of $6.4872 per hour, and 3.10 overtime hours for which he was paid at the same hourly rate plus an overtime premium payment of $3.6250. [DE 20 ¶12 at 4-5.] Rodriguez alleges that for this particular week the Casino took a tip credit of .7628 cents per hour worked (which, added to $6.4872 yields the minimum hourly wage of $7.25), to which the Casino was not entitled for the same reasons as alleged in the previous paragraph. [*Id*.]

These paragraphs amply demonstrate that Rodriguez's First Amended Complaint provides sufficient factual context to raise a plausible inference that there were at least two workweeks in which he was underpaid due to the Casino taking an

6

unauthorized tip credit that reduced his pay below the minimum wage of $7.25 per hour. Rodriguez's First Amended Complaint is distinguishable from the pleadings critiqued in *White v. Classic Dining Acquisition Corp.*, No. 1:11-cv-712-JMS-MJD, 2012 WL 1252589, *5-6 (S.D.Ind. Apr. 13, 2012) and the cases cited in it, where a complaint merely offered a generalized allegation that a minimum wage had not been paid. Neither in the Casino's initial memorandum in support of the motion nor in its reply does it adequately address the allegations of ¶¶11 and 12, hoping, I suppose, that I would somehow overlook them. The Casino tries to give me a head fake by boldly asserting (inaccurately) that Rodriguez has failed to plausibly allege that "in any work week, he was subjected to an effective wage rate that was less than the minimum wage required by the FLSA." [DE 22 at 17.] In light of the specific allegations in ¶¶11 and 12, that assertion is hard to take seriously.

The Casino also argues that the First Amended Complaint lacks "any information about when or how [the Casino] purportedly failed to provide notice to its employees of changes to the amounts of the tip credits." [DE 22 at 15.] As a general proposition, I question how detailed allegations can be "about when or how" someone failed to do something. But on the subject of the lack of statutorily required notice, the First Amended Complaint contains these pertinent paragraphs:

> 57. On or around June 2022, Defendants, and likely in response to the New Jersey FLSA lawsuit also alleging that Defendants did not comply with the tip credit notice provisions, made their first attempt to provide any information regarding the tip credit to tipped employees. Specifically, some but not all Table Games Dealers were given a document

7

> on or around June 2022 titled "Tipped Credit Acknowledgment Form" and relating to the tip credit and Defendants mandatory tip pool. Again, not all Table Games Dealers who are paid a direct cash wage of less than $7.25 an hour received this document. Rodriguez was never given this document.
>
> 58. Prior to June 2022, Table Games Dealers, including Rodriguez, were given no information regarding the tip credit. Defendants certainly did not inform Rodriguez and other Table Games Dealers of the provisions of 29 U.S.C. 203(m) that would have permitted Defendants to utilize the tip credit.

[DE 20 at 14.] Once again, the Casino ignores these allegations and instead asserts that the pleading only alleges (in ¶4 on page 2) that the Casino "failed to properly inform its tipped employees of the required tip credit provisions." [DE 22 at 16.] Obviously ¶¶57 and 58 provide more detailed and specific factual allegations in support of the conclusion that the Casino did not meet the notice requirements. The Casino's arguments about the inadequacy of the tip credit notice claims are without merit.

As to the overtime claims in Counts VII and VIII, the Casino similarly argues that Rodriguez's pleading is so vague and conclusory that it fails to state a viable claim. [DE 22 at 18-19.] The Casino contends that an overtime violation must be alleged with sufficient detail about the length and frequency of unpaid work to support a reasonable inference that the plaintiff-employee worked more than forty hours in a given week as well as uncompensated time in excess of those forty hours. [DE 22 at 18.] *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 242-43 (3rd Cir. 2014); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2nd Cir. 2013); *Lundy v. Catholic Health System of Long Island Ind.*, 711 F.3d 106, 114 (2nd Cir. 2013). In support of the motion to

dismiss, the Casino suggests that the First Amended Complaint only generally alleges that the Casino failed to pay employees for worked overtime by improperly rounding clocked in time and requiring employees to attend unpaid pre-shift meetings, but omits factual support such as how many hours were worked, or what, if anything, table games dealers were paid. [DE 22 at 12.]

Again, the Casino's argument conveniently overlooks specific allegations of the First Amended Complaint. (A reasonable observer might view the Casino's failure to confront specific allegations in the complaint as a pattern.) In this instance, ¶12 is where the relevant allegations can be found. There Rodriguez alleges that for the week of May 17 through 23, 2021, he was paid for "40 regular hours worked and for 3.10 overtime hours worked." [DE 20 at 5.] He further alleges that he was not fully paid for all overtime worked in excess of 40 hours because "Defendants unlawfully rounded Rodriguez's time and failed to pay him the overtime premium for all compensable overtime hours worked, including but not limited to time spent in pre-shift meetings." [*Id*.] The First Amended Complaint separately alleges in detail that the Casino employs a time-clock rounding procedure that effectively deprives him of credit for all the compensable minutes he actually works, and that the Casino "require[s] all Table Games Dealers to participate in an unpaid meeting at the beginning of each work shift." [*Id*. at ¶¶33-46, ¶4.] The Casino allegedly reduces employees' compensable time by rounding to the closest 15-minute interval but requiring that employees "clock in and commence work approximately 7 minutes before the start of their shift," and because

9

employees "routinely leave work and clock out between the end of their shift and 7 minutes thereafter." [DE 20 at ¶¶33,40,42, 44.][1]

"[T]o state a claim for violation of the FLSA's minimum wage provisions, [plaintiff] must allege facts giving rise to a plausible inference that he was an employee within the meaning of the Act and that he was underpaid for at least one workweek." *Brant*, 43 F.4th at 664, citing *Hirst*, 910 F.3d at 966. Rodriguez's First Amended Complaint meets this standard by alleging in some detail how his compensation for the week of May 17 through 23, 2021 did not compensate him for all time he worked over 40 hours.

## Conclusion

The Casino's motion to dismiss Rodriguez's tip credit claims and overtime claims is without merit. This is not a case of a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The First Amended Complaint clearly contains specific factual allegations that the Casino defendants unlawfully took credit for tips in a manner that reduced Rodriguez's pay in one or more given workweeks to below the applicable minimum wage per hour. The FAC also makes factual allegations plausibly

---

[1] These allegations identify with sufficient particularity unpaid time over 40 hours during a specific week for which Rodriguez alleges he was not paid overtime as the law requires. At the same time, I acknowledge that the reference in ¶12 of the FAC to the Casino "paying Rodriguez for 24 hours worked rather than his clocked hours worked" is opaque to me based on ¶12's earlier allegations about a total of 43.10 hours for which he received pay. I suspect that the reference to 24 hours is a "cut and paste" mistake, with the language having been copied in error from ¶11 (where it belonged).

demonstrating that the Casino defendants in a given workweek failed to pay Rodriguez overtime wages for all compensable hours worked in excess of 40 hours.

**ACCORDINGLY:**

Defendants' Motion to Dismiss Counts II, V, VII, and VIII of Plaintiff's First Amended Complaint [DE 22] is DENIED.

**SO ORDERED**.

ENTERED:  February 1, 2023.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE