UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| FRANCISCO RODRIGUEZ, individually and on behalf of others similarly situated, | ) ) ) | **CLASS ACTION COMPLAINT** |
| Plaintiff | ) ) ) | **FLSA COLLECTIVE ACTION COMPLAINT UNDER** |
| vs. | ) ) | **29 USC § 216(b)** |
| THE MAJESTIC STAR CASINO, LLC, d/b/a HARD ROCK CASINO NORTHERN INDIANA, HRNI HOLDINGS, LLC, d/b/a HARD ROCK CASINO NORTHERN INDIANA, HARD ROCK NORTHERN INDIANA, LLC, HARD ROCK GARY MANAGER, LLC And HARD ROCK GARY, LLC | ) ) ) ) ) ) ) ) ) ) | **CASE NO.   2:22-cv-00198-PPS-JEM** |
| Defendant | ) | |

***PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT***

## I.   INTRODUCTION

This unopposed motion seeks final approval of the class and collective action settlement of $650,000.00 (the "Settlement") between Plaintiff Francisco Rodriguez ("Rodriguez"), individually and on behalf of all class members (hereinafter collectively referred to as "Plaintiff" or "Class Members") and Defendants The Majestic Star Casino, LLC d/b/a Hard Rock Casino Northern Indiana, HRNI Holdings, LLC d/b/a Hard Rock Casino Northern Indiana, Hard Rock Northern Indiana, LLC, Hard Rock Gary Manager, LLC, and Hard Rock Gary, LLC, (collectively "Defendants")

The Settlement resolves wage and hour claims brought against Defendants on behalf of a Class defined and preliminarily approved by the Court for purposes of the Settlement only.

Specifically, the class includes employees of Defendants' casino located in Gary, Indiana, each of whom both (i) were classified by Defendant as a table games dealer or dual rate employee and (ii) were an hourly paid employee during at least one week between July 1, 2020, and October 1, 2023 (the "Covered Period").

Plaintiff alleges these employees were not properly paid minimum wages and overtime compensation and paid for all time worked. Specifically, Plaintiff alleged that (1) Defendants required all table games dealers and dual rate employees to participate in an unpaid meeting at the beginning of each work shift; (2) Defendants' time-clock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate employees properly for all time worked; (3) Defendants failed to properly inform its tipped employees of the required tip credit provisions prior to paying a sub-minimum direct cash wage and, as a result, Defendants may not claim a tip credit when paying their hourly paid Table Games Dealers; and (4) Defendants required its employees to participate in an unlawful tip-pool.

Defendant denied and continues to deny any liability to Plaintiff or the proposed Class and maintains that it has complied and continues to comply with all applicable laws. However, Defendant agreed to settle the Action in accordance with the terms of the Settlement Agreement to avoid the costs of litigation. This early resolution avoids the substantial time and costs of litigation, provides finality and certainty as to disputed claims, and is the result of substantial arm's-length negotiations.

Of the 1,380 Class Members, only 1 opted out of the Settlement, and no member of the Settlement Class has objected to the Settlement. [See Ex. 1, Settlement Administrator's Declaration, ¶¶ 6 and 7] The remaining 1,379 Class Members will be eligible to receive payments under the Settlement should the Court grant final approval and, as described more fully below, the

Settlement is fair, reasonable, and adequate. For all these reasons, Plaintiff respectfully request the Court grant his Unopposed Motion for Final Approval of Class Settlement so that funds may be distributed to workers awaiting payments.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the original action on July 19, 2022, in the United States District Court for the Northern District of Indiana, Case No. 2:22-cv-00198-PPS-JEM. [Docket No. 1] Plaintiff filed his Amended Complaint on November 10, 2022. [Docket No.20] During the course of litigation, the Parties exchanged formal discovery and informal information. Once they received this information, Plaintiff was capable of projecting the damages sought by the overall class and each class member, and therefore, no additional factual discovery was necessary to evaluate the matter for settlement purposes. Plaintiff served Defendants with a settlement demand based on the discovery and damages projection. Although Defendants deny any liability, to avoid protracted litigation and expenses, the Parties reached a settlement, following arms'-length settlement negotiations at a day-long mediation in Chicago on January 4, 2024, conducted by Anthony M. Stites, an experienced wage-and-hour mediator..

The proposed Class Action and Collective Action Settlement Agreement requires the creation of a settlement class for the purpose of effectuating the agreement. The following class shall be formed under FRCP 23(b)(3):

> Each employee who was both (i) classified by Defendant as a table games dealer or dual rate employee and (ii) an hourly paid employee during at least one week between July 1, 2020, and October 1, 2023.

A list of the 1,380 Class Members is attached to the Class Action Settlement Agreement as Exhibit A. Each Class Member will receive their pro rata share of the Net Settlement Fund based upon: a) each Class Member's number of Tipped Hours worked and the difference between

that Class Member's hourly rate and $7.25; and b) the number of shifts worked by each Class Member and his/her respective hourly rate[1].

Defendants denied, and continue to deny, all of Plaintiff's material allegations and that they have any liability to anyone under the claims asserted in the Action. Specifically, Defendants contend that they complied with all applicable law at all times and that it acted at all times with the utmost good faith. Defendants thus maintain that they owed no additional wages under the FLSA or Indiana wage laws.

With the help of an experienced wage and hour mediator, Tony Stites, the Parties reached a settlement at mediation, which they memorialized in a Settlement Agreement. (See Docket No. 84-1)

On November 18, 2024, the Parties filed their Joint Motion for Preliminary Approval of Class and FLSA Collective Action Settlement. [Docket No. 83] On November 25, 2024, the Court entered its Order granting the Parties' Joint Motion for Preliminary Approval of Class Settlement ("Preliminary Approval Order") and subsequently setting a hearing on final approval for June 17, 2025. (Docket No. 89) Pursuant to the Preliminary Approval Order, a Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Class Notice") was sent to each Class Member by first-class U.S. Mail. (Docket No. 92-1, "Declaration of Settlement Administrator). The Class Notice informed Class Members of the terms of the Settlement, their rights under the Settlement, their right to object to the Settlement, their right to receive a Settlement Share, their right to opt out of the Settlement and pursue their own remedies, and their right to appear in person

---

[1] Defendants did not participate in any determination of the criteria or assessment of the Class Members' pro rata share of the Net Settlement Fund. Defendants have no position as to the distribution of the settlement proceeds, so long as they are approved by Plaintiffs' counsel and the Court.

4

or by counsel at the final approval hearing and be heard regarding final approval of the Settlement. Adequate periods of time were provided by each of these procedures.

As of this filing, of the 1,380 Class Members, only one opted out of the Settlement and no Class Member has objected to the Settlement. [See Ex. 1, Settlement Administrator's Declaration, ¶¶ 6 and 7]

### III. SUMMARY OF THE SETTLEMENT

#### A. Settlement Classes.

The Settlement requires the certification of the following class for the purpose of effectuating the Parties' agreement:

> Each employee who was both (i) classified by Defendant as a table games dealer or dual rate employee and (ii) an hourly paid employee during at least one week between July 1, 2020, and October 1, 2023.

(Docket No. 84-1, Settlement Agmt., § I. "Class Member" Definition.)

#### B. Settlement Amount.

The Settlement obligates Defendants to pay a Total Settlement Amount of Six Hundred Fifty-Thousand dollars ($650,000.00), from which all payments related to the Settlement shall be made, including payment of all Settlement Shares to participating Class Members; payment of the Class Representative Payment to Plaintiff; payment of Class Counsel's attorneys' fees and expenses; the employer portion of payroll taxes applicable to the portion of Settlement Shares designated as wages; and the Settlement Administrator's fees and expenses. (Docket No. 84-1, Settlement Agmt., § I "Net Settlement Fund" Definition.)

The Net Settlement Fund to be distributed to the Class Members will be the $650,000.00 *minus* any service award, attorney's fees, litigation expenses, and claims administration expenses approved by the Court. If the Court approves Plaintiff's request for a Fifteen-thousand-dollar

($15,000.00) service award and Class Counsel's request for one-third of the fund ($216,666.67) in attorney's fees, then the Net Settlement fund will total $418,333.33 less settlement administration expenses.[2] Defendants consented to Plaintiff selecting the settlement administrator, and Plaintiff selected Analytics Consulting, LLC to serve that role, and its estimated costs are anticipated to be $19,804.00. As a result, the amount to be distributed to Class Members equals $398,529.30.

Each Class Member will receive their pro rata share of the Net Settlement Fund based upon: a) each Class Member's number of Tipped Hours worked and the difference between that Class Member's hourly rate and $7.25; and b) the number of shifts worked by each Class Member and his/her respective hourly rate.

The settlement shares to be distributed to Class Members are also included in Exhibit A which is attached to the Settlement Agreement (Id.). Settlement shares to Class Members range from the highest payment of $3,311.15 to the lowest payment of 0.16 cents. Approximately 544 of the 1,380 Class Members will receive a payment between 0.16 cents and 0.33 cents because: 1) they were never paid less than the minimum wage of $7.25; and 2) they only worked one or two shifts during the entirety of the covered period. Even including those 544 Class Members with only one or two shifts worked and with no tip-credit damages, the average payment to Class Members is $288.79.[3]

C. **Payments to Class Representative and Class Counsel.**

Plaintiff and Class Counsel have applied to the Court for a Class Representative Payment of Fifteen-Thousand Dollars ($15,000.00) to Plaintiff. Such payments are commonly referred to

---

[2] Defendants did not participate in the determination of the manner and share of distribution of the settlement funds, including the amount proposed to be paid to Plaintiff, Plaintiff's counsel or the settlement administrator. Defendants take no position as to the proposed distribution if approved by Plaintiff's counsel and this Court.
[3] Defendants have relied upon Plaintiffs' representation of this calculation.

as "incentive" or "enhancement" awards. Because named plaintiffs are "an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citation omitted); *see also Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *9 (N.D. Ind. Oct. 24, 2013) (approving incentive awards for each of 34 named plaintiffs where incentive awards were small percentage of overall recovery and named plaintiffs acted as representatives despite knowing litigation could be long and complex and that they would be subject to depositions and cross examination at trial).

Plaintiff provided documents and information to Class Counsel, reviewed documents, dedicated substantial time to this case, including participating in the day-long mediation with the private mediator, and faced the risk of a cost award against him. Without the significant work done by Plaintiff, the Class Members would not have benefitted from the Settlement. Federal courts in Indiana have approved class representative payments equal to or more than the amount sought for the Plaintiff in this case. (See *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind.), approving $15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; and *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind.) approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000)

In addition, by separate motion and filed on May 16, 2025, Class Counsel petitioned the Court for a Class Counsel Fees and Expenses Payment of not more than Two Hundred Sixteen Thousand Six Hundred Sixty-Six Dollars and Sixty-Seven Cents (216,666.67), representing one-third of the Total Settlement Amount and $0.00 for expenses. (Docket Nos. 91 and 92)

"Under the 'common-fund' doctrine, class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *2 (S.D. Ind. Sept. 4, 2019) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)). The primary benefit that this Settlement provides to the Class Members is the creation of a gross settlement pool from which the Class Members will receive compensation for the overtime claims raised in the lawsuit. The percentage requested in attorneys' fees—one-third (33.33%) of the common fund—is reasonable and has routinely been approved by the courts in the Seventh Circuit in complex areas of law. *See id.* at *3.

### D. Fees and Expenses of the Settlement Administrator.

The Settlement Administrator, Analytics Consulting LLC's fees and expenses shall be paid from the Total Settlement Amount. The Settlement Administrator's fees and costs are projected to be $19,804.00.

### E. Release of Claims.

In consideration for their awarded Settlement Shares, all Class Members (other than those Class Members who timely and validly elect not to participate in the Settlement) release the following claims:

**"Released Claims"** means all claims arising prior to January 4, 2024, and asserted in or reasonably related to the Action, including all such claims arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA), Indiana Wage Payment Statute, I.C. § 22-2-5-1, *et seq.* ("IWPS"), or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages and associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

(Docket No. 84-1, Settlement Agmt., § I, "Released Claims" Definition)

### IV. Settlement Administration, Opting Out and Objections.

Subject to Court approval, the Settlement has been or will be administered by the Settlement Administrator in accordance with the following deadlines:

1. Analytics has been engaged in this matter to provide settlement administration services, including the mailing of the Court-approved class notice and, upon final approval, the distribution of settlement benefits to class members.

2. To identify class members and effectuate the Notice mailing, Analytics received spreadsheets containing pay data and punch summary data for Class Members ("Class Data"). The Class Data provided names, Employee Identification Numbers, and shift and wage data, amongst other information. Analytics worked with Class Counsel and Defense Counsel to identify 1,380 unique Class Members in the Class Data. Analytics subsequently received from Defense Counsel a spreadsheet containing mailing addresses for 1,367 Class Members.

3. Prior to mailing, all addresses were updated using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS");[4]

---

[4] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

    certified via the Coding Accuracy Support System ("CASS");[5] and verified through Delivery Point Validation ("DPV").[6]

4. On April 16, 2025, Analytics mailed by first class mail the approved Notice of Proposed Settlement of Class Action ("Notice") to the 1,367 Class Members that had a mailing address available. A copy of the template of the form of Notice that mailed is attached as **Exhibit A.**

5. To date, 33 Notices were returned to Analytics by the U.S. Postal Service with a forwarding address. Analytics updated the class list with the forwarding address and re-mailed the Notice to the updated addresses.

6. To date, 203 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address. Analytics conducted a skip trace in an attempt to ascertain a valid address for the affected class members. As a result of these efforts, 121 new addresses were identified for those class members. Analytics subsequently updated the class list with the new address and processed a re-mail of the Notice to each of the affected class members.

7. Analytics also established a toll-free telephone number (1-866-813-7504) for the action, where class members could speak to a live operator regarding the status of the action or obtain answers to questions about the notice, or request to have a notice mailed to them.

---

[5] The CASS is a certification system used by the USPS to ensure the quality of ZIP +4 coding systems.

[6] Records that are ZIP +4 coded are then sent through Delivery Point Validation ("DPV") to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

    8.     The deadline for class members to object or request exclusion is June 16, 2025. To date, Analytics has not received any exclusion requests.

    9.     Analytics has not received any objections.

(Docket No. 92-1, Declaration of Settlement Administrator)

To date, the Parties have received one Opt-Out and no objections [Exhibit 1, ¶¶ 6 - 7], suggesting that 100% of Class Members would like the settlement to proceed.

Additionally, no one submitted an objection and/or stated their intent to appear at the Final Fairness Hearing. Pursuant to the Court's approved Notice to Class Members, "If you submit a timely written objection, you may also appear, or appear through counsel of your choice, paid at your own expense, and be heard at the time of the final approval hearing, if you wish to do so, but only if you indicate in your objection that you intend to appear." (Docket No. 84-1, p. 48) Class Members were apprised of, via the Notice, the requirements to be heard at the final approval hearing. Again, there have been no objections to the settlement at all. As a result, no Class Member is expected to appear or be heard at the final approval hearing.

### V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

The Parties have agreed to the certification of a class solely for purposes of the Settlement in this case. The Settlement Agreement was negotiated at arm's length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. Therefore, the Parties request that the Court grant final approval of the Settlement.

**A. The Settlement Is Fair, Reasonable and Adequate, and Final Approval Is Warranted.**

The Settlement was negotiated at arms' length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. See *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010). For FLSA purposes, the Court

must consider "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching. *Id.* The following factors are to be considered:

> (1) [T]he complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Id.*

Under Federal Rule of Civil Procedure 23(e)(2), the Court may approve a class action settlement if "it is fair, reasonable, and adequate[.]" As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at *6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)). Federal courts naturally favor the settlement of class action litigation. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes") (citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citations omitted); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13.1 (5th ed. Supp. 2015) (noting that there is "a 'strong judicial policy in favor of class action settlement'"); *id.* at

§ 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

In the present case, the Settlement meets the fairness requirements for multiple reasons. First, in the seventeen months before prior to attending mediation and entering into the Settlement, the Parties engaged in significant exchange of documents and information, including data pertaining to Class Members, and engaged in numerous discussions regarding the merits of the claims and defenses. This enabled the Parties to determine the scope of potential damages and to assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (in granting preliminary approval of settlement, noting that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

There were several very significant obstacles to the Plaintiffs' recovery of a maximum amount. First, Plaintiff had yet to file his motion for certification of the class, which was expected to be vigorously opposed by Defendants. If Defendants were successful in opposing certification, this lawsuit would not have been resolved on a class-wide basis at all.

Second, Plaintiff's tip-credit claim was largely based upon the allegation that Defendants did not properly comply with the tip-credit notice provisions of the FLSA. This was also an allegation that Defendants vigorously disputed and produced evidence of the notice they provided to employees.

Third, in order to be awarded liquidated damages under the Indiana Wage Payment Statute, Plaintiff would have had to prove that Defendants acted in bad faith when failing to comply with

the law. Defendants maintained that at all times they acted in good faith and with reasonable grounds for believing they had not violated the law.

Fourth, Defendants argued that any damages resulting from Defendants' time rounding practices were *de minimis*.

Fifth and finally, Defendants had the resources and willingness to defend this Action to the bitter end and have the Court resolves all questions on certification, liability, and damages.

Pursuant to the Class Action Settlement Agreement, Defendants will pay a total settlement amount of Six Hundred and Fifty-Thousand Dollars ($650,000.00). The Net Settlement Fund to be distributed to the Class Members will be the $650,000.00 *minus* any service award, attorney's fees, litigation expenses, and claims administration expenses approved by the Court. If the Court approves Plaintiff's request for a Fifteen-thousand-dollar ($15,000.00) service award and Class Counsel's request for one-third of the fund ($216,666.67) in attorney's fees, then the Net Settlement fund will total $418,333.33 less settlement administration expenses.[7] Defendants consented to Plaintiff selecting the settlement administrator, and Plaintiff selected Analytics Consulting, LLC to serve that role, and its estimated costs are anticipated to be $19,804.00. As a result, the amount to be distributed to Class Members equals $398,529.30.

"Courts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Reamer*, 2014 WL 6388735, at **2, 8 (granting preliminary approval of settlement that awarded one hundred percent of wages deducted and about one third of the maximum liquidated damages available under

---

[7] Defendants did not participate in the determination of the manner and share of distribution of the settlement funds, including the amount proposed to be paid to Plaintiff, Plaintiff's counsel or the settlement administrator. Defendants take no position as to the proposed distribution if approved by Plaintiff's counsel and this Court.

14

Indiana law)[8]; *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of the best possible recovery and noting courts have approved settlements amounting to 15% and 17% of the best possible recovery) (citations omitted); *Godshall v. Franklin Mint. Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of the best possible outcome to be reasonable); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 28, 1998) (stating that an agreement securing between six and twelve percent of the potential trial recovery "seems to be within the targeted range of reasonableness").

All involved would benefit from settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Preliminary approval of a settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendant denies liability, and the Parties disagree about the merits of the case. *See Chapman*, 2015 WL 9478548, at **7-8.

Finally, adding to the reasonableness of the settlement, and to quote from the Northern District of Indiana, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 [quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)].

---

[8] In their preliminary approval briefing, the parties in *Reamer* calculated that the settlement amount represented a recovery of 62.5% of the possible damages. *See* Joint Mot. Conditional Certification of Settlement Class, Prelim. Approval of Settlement Agreement and Approval of Notice and Release of Claims Form at 5, 13, *Reamer v. Zolman Tire, Inc.*, No. 3:14-cv-1601 (N.D. Ind. Oct. 27, 2014), ECF No. 36.

Moreover, no one has objected to the Settlement and only 1 of the 1,380 Class Members has opted out of the Settlement. Accordingly, there has been no opposition to the settlement and the reaction of Class Members has been positive.

As such, the Settlement here is fair, reasonable and adequate, and final approval is warranted.

### B. The Service Awards to The Lead Plaintiff is Reasonable and Warranted.

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Knox v. Jones Group*, 2017 WL 3834929 *2 (S.D. Ind. Aug. 31, 2017) (citations omitted). See also *Espenscheid v. DirecSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing the importance of incentive awards). "Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Knox*, 2017 WL 3834929, at *2, citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases). "In examining the reasonableness of the requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929 at *2, citing *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727 *16 (N.D. Ill. Feb. 28, 2012).

This $650,000.00 class and collective action settlement would not have been possible without Plaintiff Francisco Rodriguez. Mr. Rodriguez participated in gathering information, providing documents and information to Class Counsel, participating in planning, formal

discovery and, attending the day-long mediation with the private mediator, making decisions regarding the settlement, and faced the risk of a cost award against him. Without the significant work done by Mr. Rodriguez, the Class Members would not have benefitted from the Settlement. The $15,000 service award agreed to by the parties and preliminarily approved by the Court are well within the realm of reasonableness of similar service awards within our Circuit. (See Order, *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind. Oct. 15, 2019) (Docket No. 55), approving $15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; Order, *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind. May 9, 2017) (Docket No. 31), approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000; and Entry Approving Settlement Agreement, *Bridgewater and Van Ness II, et al. v. Jadcore, LLC*, Case No. 2:16-cv-00060-WTL-DLP (S.D. Ind. June 7, 2019) (Docket No. 138), approving $10,000.00 representative payments to plaintiffs from a gross settlement amount of $351,296.92.)

Finally, courts regularly approve incentive awards paid from the common fund. See *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). Plaintiff requests final approval of the service award to Lead Plaintiff Francisco Rodriguez.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court grant Final Approval of the Class Action Settlement Agreement, which was preliminarily approved on Novemeber 25, 2024 (Docket No. 85), grant all requested attorneys' fees, costs expenses and Lead Plaintiff's service award, and order that class funds be distributed to all participating Class Members.

Dated: June 16, 2025

Respectfully submitted,

*/s/Robert J. Hunt*_____

Robert J. Hunt (#30686-49)
Robert F. Hunt (#7889-84)
THE LAW OFFICE OF ROBERT J. HUNT, LLC
1905 South New Market Street, Suite 168
Carmel, Indiana 46032
Telephone:  (317) 743-0614
Facsimile:  (317) 743-0615
rob@indianawagelaw.com
rfh@indianawagelaw.com

Attorneys for Plaintiff

## *CERTIFICATE OF SERVICE*

      I certify that on June 16, 2025 a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                                      <u>/s/Robert J. Hunt</u>
                                                                      Robert J. Hunt